IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD VON BARGEN, *et al.*, | No. C 06-04744 MEJ |
| Plaintiffs, | **ORDER RE MOTION TO PERMIT AN ACTION WHICH EXCEEDS THE TOTAL AMOUNT OF GOVERNMENT CLAIM** [Dkt. #41] |
| v. | |
| USA, *et al.,* | |
| Defendants. | |

Pending before the Court is Plaintiff Gerald Von Bargen's Motion to Permit an Action Which Exceeds the Total Amount of Government Claim or Alternatively for Leave to Amend His Government Claim (Dkt. #41). The Government has filed an Opposition (Dkt. #45), to which Plaintiff filed a Reply (Dkt. #54). Additionally, the Government has filed a Sur-Reply. (Dkt. #55.) For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

**I.  BACKGROUND**

The relevant facts are as follows. Plaintiff, along with Plaintiff Khoeun Kahn, initiated this action on August 4, 2006, by filing a Complaint against Defendants United States, United States Postal Service, and Jefferey Eugene Frome. (Dkt. #1.) Plaintiff alleges that, on September 18, 2004, he and Plaintiff Kahn were bicycling in Santa Rosa, California. (Compl. at 2, ¶13.) On their way to Plaintiff's house, Plaintiff crossed Hoen Avenue on his bike and came to a stop in the bike lane while waiting for Plaintiff Kahn to cross the street behind him. (Compl. at ¶3, ¶14.) At that

1 point, Plaintiff alleges that Defendant Frome, who was driving a United States Postal Service
2 vehicle, turned the corner onto Hoen Avenue and drove for several feet in the bike lane, colliding
3 with Plaintiff and forcing him onto the hood of the vehicle. (*Id.*) Defendant Frome then continued
4 driving forward, colliding with Plaintiff Kahn and throwing Plaintiff from the hood of the vehicle to
5 the ground several feet away. (Compl. at 3-4, ¶¶ 14-15.) As a result, Plaintiff alleges that he
6 suffered severe mental and physical injuries and incurred other damages, including medical costs
7 and loss of earning capacity. (Compl. at 4-5, ¶¶20-23.) Based on these allegations, Plaintiff asserts
8 a negligence claim against Defendants pursuant to the Federal Tort Claims Act ("FTCA"). (Compl.
9 at 4.)

10 Prior to filing the Complaint in this matter, and in accordance with section 2675(a) of the
11 FTCA, on December 8, 2004, Plaintiff's then-counsel, James Sutherland, filed Plaintiff's
12 administrative claim with the United States Postal Service. (Dkt. #46, "Declaration of Michael T.
13 Pyle," ¶5, Ex. 3.) In that document, Plaintiff identified his personal injuries as: "shoulders, arms,
14 back, buttocks, tailbone, hips, knees, severe abrasions and contusions." (*Id.*) Plaintiff also indicated
15 that "the extent of the injuries are not yet known." (*Id.*) With respect to the total amount of his
16 claim, Plaintiff stated that his damages were "in excess of $25,000." (*Id.*) Thereafter, on June 21,
17 2005, Mr. Sutherland filed Plaintiff's amended administrative claim, which remained substantially
18 the same as the original claim except for the claim amount. (Pyle Decl., ¶6, Ex. 4.) Specifically,
19 Plaintiff amended his claim amount to $252,500, with $2,500 of that amount representing property
20 damage, and $250,000 corresponding to personal injury damages. (*Id.*)

21 In August 2006, Plaintiff, along with Plaintiff Kahn, filed this action. On February 2, 2009 -
22 two and a half years after filing the Complaint, and three and a half years after filing his amended
23 administrative claim - Plaintiff filed the instant Motion, seeking an order from the Court allowing
24 him to seek damages in this case exceeding the amount alleged in his amended administrative claim,
25 or, alternatively, seeking leave to amend his administrative claim to assert $1.5 million in damages.
26 Alternatively, Plaintiff contends that he is entitled to relief from the FTCA's cap on recoverable
27 damages pursuant to Federal Rules of Civil Procedural 60(b) and 6(b). The Court will evaluate
28 Plaintiff's arguments under both the FTCA and the Federal Rules, in turn.

## II.  DISCUSSION

**A.    Legal Standard - Section 2675 of the Federal Tort Claims Act**

The FTCA provides plaintiffs an exclusive remedy against the United States for injuries arising out of tortious acts committed by federal government employees within the scope of their employment.  28 U.S.C. § 2671 *et seq*.  As a prerequisite to filing suit under the FTCA, a plaintiff must exhaust his or her administrative remedies.  28 U.S.C. § 2675(a).  Particularly, section 2675(a) requires a plaintiff to first present an administrative claim to the appropriate federal agency and then receive a final denial of the claim from the agency or allow six months to pass without a final disposition.  *Id.*  Thereafter, if the plaintiff files an action in the district court for damages, the FTCA prohibits the plaintiff from seeking damages "in excess of the amount of the claim presented to the federal agency."  *See*  28 U.S.C. § 2675(b).

Section 2675(b), however, carves out two exceptions to this cap on recoverable damages.  Specifically, section 2675(b) states:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

The two exceptions are distinct: "newly discovered evidence" denotes evidence that existed when the administrative claim was filed, but was "not discoverable" at that time; "intervening facts," on the other hand, concern information or events arising after the filing of the claim.  *See Lowry v. United States*, 958 F. Supp. 704, 710 (D. Mass. 1997).  "While a plaintiff may seek a larger amount if he meets either of these tests, the burden of proof under both falls on the plaintiff."  *Salcedo-Albanez v. United States*, 149 F. Supp. 2d 1240, 1243 (C.D. Cal. 2001) (citing *Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990)); *see also Kielwin v. United States*, 540 F.2d 676, 680 (4th Cir. 1976).

In determining whether a plaintiff satisfies one of the two exceptions set forth in section 2675(b), the court applies an objective standard.  *See Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (remanding FTCA action and instructing district court to determine whether a

claimant's injuries were "reasonably foreseeable" at the time the claimant filed the claim). Specifically, information which a plaintiff could have discovered through the exercise of reasonable diligence does not qualify as newly discovered evidence or intervening facts. *See id*; *see also Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986). In cases involving personal injuries - such as the instant case - the FTCA does not hold plaintiffs to a standard that charges them with "knowing what the doctors could not tell [them]." *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985). As one district court explained, "[W]hether the plaintiff is seeking an increase under the rubric of 'newly discovered evidence' or 'intervening facts,' one of the key issues is foreseeability. If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed. On the other hand, if it was not . . . [then] an increase may be allowed." *Lowry*, 958 F. Supp. at 711. Nevertheless, "[w]hen existing medical evidence and advice put the claimant 'on fair notice to guard against the worst-case scenario' in preparing the administrative claim," an attempt to increase the amount of the claim during litigation should be rejected." *Michaels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994) (citing *Reilly v. United States*, 863 F.2d 149, 172 (1st Cir. 1988)). Only in instances where an existing injury "worsen[s] in ways not reasonably discoverable by the claimant and his or her treating physician," should the claimant be allowed to increase the amount of the claim once the suit is filed. *Id*. Thus, newly discovered evidence is evidence that materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when he filed the claim, not evidence that merely bears on the precision of the prognosis. *See Zurba v. United States*, 318 F.3d 736, 741 (7th Cir. 2002). Accordingly, in reviewing evidence to determine whether it qualifies for one of the exceptions under 2675(b), the court looks at what was reasonably known or discoverable at the time the claim was filed, not at what the claimant expected. *See Michaels,* 31 F.3d at 689.

**C.     Analysis of Plaintiff's Arguments Under Section 2675(b)**

As section 2675(b) makes clear, in order to recover damages greater than those asserted in his amended administrative claim, Plaintiff must demonstrate facts qualifying as either newly-discovered evidence not discoverable at the time he filed his claim, or intervening facts arising after he filed his claim. Toward this end, Plaintiff proffers three bases to support the increase of the

4

damages sought in his amended claim. First, Plaintiff contends that an MRI performed in July 2005 revealed a L5-S1 disc protrusion. (Mot. at 4.) Second, Plaintiff asserts that at the time he filed his amended claim, he did not "have any ability to foresee that he would continue to suffer pain throughout his shoulder and back." (*Id.*) Third, Plaintiff states that, since filing the amended claim three doctors have determined that he is totally disabled from his job and cannot return to work. (*Id.*)

In support of his argument that these events meet the exceptions in 2675(b), Plaintiff offers the following explanation. Plaintiff asserts that, when he submitted his amended claim in July 2005, "no doctors had yet advised [him] that his back pain could worsen as a result of the accident, nor that [his] body[] would continue to experience pain as a result of and interfere with his employment." (Mot. at 7.) Particularly, Plaintiff indicates that, after the accident, he sought treatment from his primary care physician, James Devore, M.D., who referred him for follow-up care with Dr. Steven Smith. (Dkt. #42, "Declaration of Gerald Von Bargen," at 2, ¶6.) On December 14, 2004, Plaintiff was admitted to Sutter Warrack Hospital for a "left shoulder arthroscopic subcronial decompression and possible rotator cuff repair." (*Id.*) He states that the impression was "post-traumatic partial versus complete tear of the suprasinatus left shoulder." (*Id.*) After the shoulder repair, Plaintiff underwent physical therapy to his shoulder and lower back. (*Id.*)

Thereafter, Plaintiff continued to experience pain in his lower back. (*Id.* at 2, ¶7.) On July 20, 2005, Plaintiff underwent an MRI, which Plaintiff avers demonstrated an L5-S1 disc protrusion. (*Id.* at 2-3, ¶7.) Plaintiff states that on August 1, 2006, he sought further care and a second opinion from Dr. Jack Miller, the former chief of neurology at Kaiser Hospital. (*Id.* at 3, ¶8.) According to Plaintiff, Dr. Miller made the following diagnosis:

> One, status post right rotator cuff repair secondary to motor vehicle accident of 9/18/04. Two, low back injury secondary to motor vehicle accident of 9/18/04 with a suggestion of a right radiculopathy and post traumatic sacrotiletitus, questionable sacrofracture. Three, cervical injury plus/1 bilateral carpal tunnel syndrome[.] [A]nd [f]our, depression with associated headaches secondary to motor vehicle accident of 9/18/04.

(Von Bargen Decl. at 3, ¶8.)

5

Plaintiff states that Dr. Miller then referred him to Marcia Luisi, M.D., for nerve conduction studies. He states that later, in May 2008, he began treatment with Michael L. Tran, M.D., and has received multiple trigger point injections and MRIs. (*Id*. at 4, ¶12.) He also indicates that his primary pain medication has stopped providing him relief after several years, and as a result, Dr. Tran placed him on new pain medications, including methadone, to alleviate the pain from his spine. (*Id.*)

Additionally, Plaintiff states that, after he filed his amended administrative claim, Dr. Devore, Dr. Miller, and "the physician at 3M Corporation," each determined that he is totally disabled from his job and cannot return to work. (Von Bargen Decl. at 3, ¶9.)

Citing the foregoing, Plaintiff contends that, at the time he filed his amended administrative claim, he "had no way to foresee, or suspect, at the time the amended claim form was submitted that a disc protrusion would be found on MRI. Nor did he have any ability to foresee that he would continue to suffer pain throughout his shoulder and back. Nor did he have any idea that his doctors would eventually conclude that he was totally disabled from his occupation." (Mot. at 4.) Plaintiff thus argues that "[t]he damages [he] sustained after filing his government claim, including both medical expenses and pain and suffering, and permanent disability from work," qualify as either newly-discovered evidence or intervening facts under section 2675(b). He therefore urges the Court to allow him to seek damages stemming from these subsequent developments which exceed the $252,500 stated in administrative claim.

The Government opposes Plaintiff's request. First, the Government contends that Plaintiff has failed to proffer sufficient evidence linking the disc protrusion and his inability to resume work to the September 2004 accident, as opposed to being a degenerative effect of Plaintiff's long-standing arthritis. (Opp. at 9.) Second, as to Plaintiff's assertion that he did not know that he would be permanently disabled, the Government argues that Plaintiff admitted in his Declaration and at his deposition that he stopped working on a permanent basis in late 2004 or early 2005, and applied for long-term disability before he filed his amended claim. (*Id*.) Finally, the Government asserts that it would be unfairly prejudiced if Plaintiff is permitted to increase the amount of damages stated in his administrative claim. (*Id*.) It argues that because fact and expert discovery has already closed in

1  this matter, allowing Plaintiff to pursue nearly six times the damages initially claimed would
2  jeopardize its ability to defend the case. (*Id*.)

3  In support of their respective positions, both Plaintiff and the Government have cited
4  numerous decisions applying the two exceptions set forth in 2675(b) in various scenarios. The
5  Court has reviewed and considered these authorities. While they offer some guidance as to how the
6  Court should approach Plaintiff's Motion, with the exception of the singular Ninth Circuit decision
7  in *Richardson*, the cases are not binding on this Court. In reviewing the decisions, the common
8  thread running through them is that, when evaluating whether a plaintiff has demonstrated one of
9  2675(b)'s exceptions, courts must engage in case-specific analysis. With that in mind, the Court
10 turns to Plaintiff's arguments and supporting evidence.

   1.   <u>Disability</u>

12 Turning first to Plaintiff's argument that his doctors' determination that he is permanently
13 disabled from his position as a machinist meets the exceptions in 2675(b), the Court disagrees.
14 Although Plaintiff argues that, at the time he filed his amended claim in June 2005, he did not have
15 any idea that his doctors would eventually conclude that he was totally disabled from his
16 occupations,[1] the Government has submitted testimony from Plaintiff's deposition indicating that
17 Plaintiff was on notice by June 2005 that he may be permanently disabled from working. Reviewing
18 the transcript excerpts, Plaintiff testified as follows regarding the onset of his disability:

> Q.  What's been the – what have been the employment steps along the way or getting approval for disability, et cetera? If you could walk us through that.
>
> A.  After the accident I was out for two, three months. I went back to work for approximately two months, and I'm guessing at that one again. At that time, I just – I couldn't do my job. And so I went out again, and that was permanent. So that brings us up to now.
>
> Q.  Okay. So you've been permanently out since late 2004 or early 2005 then?
>
> A.  Yes.

26 (Dkt. #46-3, "August 29, 2007 Videotaped Deposition of Gerald Von Bargen" at 3-4, 32:24-33:11.)

---

[1] (*See* Dkt. #44, Von Bargen Decl. at 3, ¶10.)

Further, as the Government points out, Plaintiff also testified that he had discussed long-term disability with his employer approximately six months after the accident, which would have been in the March 2005 timeframe. (Dkt. #46-3 at 6-7, 35:35:18-36:6.) Based on this evidence, Plaintiff could have reasonably foreseen at the time he filed his amended claim that his disability may be permanent.

During oral argument, Plaintiff argued that, while he may have gone on long-term disability in 2005, he did not know he was going to be permanently disabled from his position. He contends that it was not until Dr. Devore (his primary care physician), Dr. Miller, and "the physician at 3M Corporation" advised him that they determined he is totally disabled and cannot return to work that he became aware he was totally disabled. The Court is unpersuaded by Plaintiff's argument. First, Plaintiff has failed to proffer any evidence pinpointing the date that the doctors made this determination. Second, although Plaintiff attempts to draw a distinction between long-term disability and permanent disability, the key point is that at the time Plaintiff went on long-term disability, he could have reasonably foreseen that his disability may ultimately be permanent. Third, as the excerpt of Plaintiff's deposition testimony demonstrates, Plaintiff concedes that when he tried to return to work after the accident, he found that he was unable to perform his job functions, causing him to stop working. Thus, even if Plaintiff's doctors did not opine that he was permanently disabled from his machinist position until after he filed his amended claim, given the fact that Plaintiff had been unable to return to work in late 2004 and was already pursuing long-term disability benefits by early 2005, it was reasonably foreseeable to Plaintiff that he may be permanently disabled from his position at the time he filed his amended claim in July 2005. In other words, Plaintiff's disability manifested itself within months after the accident - it was not a fact that revealed itself months or years after Plaintiff filed his amended claim. Moreover, by his own admission, Plaintiff was disabled from working prior to the time he filed his amended claim. Thus, his disability was not caused by an intervening event occurring after he filed his claim. Accordingly, the Court finds that Plaintiff has failed to demonstrate that the permanency of his disability or the resulting loss of income he may have incurred qualifies as a newly-discovered evidence or an intervening fact under section 2675(b).

8

### 2. Pain and Medical Expenses

Turning next to Plaintiff's assertion that he did not know the full extent and duration of the pain and suffering he would experience as a result of the accident at he time he filed his amended claim, the Court finds that this, too, fails to meet either exception under 2675(b). Specifically, while Plaintiff contends that his pain increased after he filed his amended administrative claim, Plaintiff has not pointed to any facts demonstrating that either the level or duration of the pain he experienced was beyond that which was reasonably foreseeable at the time he filed his amended claim. To be sure, based on the evidence currently before the Court, it is evident that Plaintiff was at least experiencing low back pain around the time he filed his amended claim in June 2005. (*See* Von Bargen Decl. at ¶10, ll 17-19.) Thus, the onset of Plaintiff's pain preceded the filing of his amended claim and he could have reasonably anticipated that it would continue into the future. Accordingly, Plaintiff has failed to establish that his pain post-June 2005 qualifies as newly-discovered evidence or an intervening fact.

Likewise, Plaintiff has not demonstrated that any of the medical expenses he incurred after July 2005 meet one of the exceptions in 2675(b). In his Declaration, Plaintiff provides an accounting for $27,175.95 in medical expenses. (Dkt. #44, Von Bargen Decl. at 2, ¶5.) Plaintiff, however, fails to indicate which of the expenses he incurred before July 2005, and which he incurred after that date. More significantly, Plaintiff has not proffered any explanation as to why any medical expenses that arose after he filed his amended claim qualify as newly-discovered evidence or intervening facts or how they are connected to or result from such evidence or facts. As Defendant points out, based on the medical treatment Plaintiff indicates he received after June 21, 2005 - namely, a low back MRI ($3,290.00), and consultations with Dr. Luisi ($1,125.00) and Dr. Mill ($1,450.00), Plaintiff only incurred an additional $5,865 in medical expenses after he filed his amended claim. (Def. Sur-Reply at 2.) Plaintiff has not explained why this additional $5,850 in expenses was not factored into the demands in his two prior administrative claims or how this figure supports - even in part - his request to increase his damages claim to $1.5 million. As a result, the Court finds that Plaintiff's additional medical expenses do not meet the exceptions to the statutory

cap under section 2675(b) or otherwise justify allowing Plaintiff to seek damages in excess of his administrative claim.

### 3. L5-S1 Disc Protrusion

Next, Plaintiff asserts that his amended administrative claim does not take into account the July 25, 2005 MRI that demonstrated a L5-S1 disc protrusion. The Government, in opposition, argues that Plaintiff has failed to submit any evidence linking the disc protrusion to the accident, as opposed to being a degenerative effect of Plaintiff's long-standing arthritis. (Opp. at 9.)

In support of his argument, Plaintiff proffers the Declaration of Dr. Jack Miller, a neurologist and psychiatrist who examined Plaintiff on August 1, 2006, and August 2, 2007. (Dkt. #54-3.) Notably, Dr. Miller was neither Plaintiff's treating physician at the time of the September 2004 accident, nor the doctor that diagnosed the L5-S1 disc protrusion based on the July 25, 2005 MRI. Reviewing Dr. Miller's Declaration and supporting exhibits consisting of reports from his two examinations of Plaintiff, the Court agrees with the Government that Dr. Miller's reports do not conclusively establish that the L5-S1 disc protrusion was based solely on the September 2004 collision. Specifically, Dr. Miller opines that the "major contribution comes from his right psttraumatic sacroileitis sustained in his injury of 9.18.04." However, Dr. Miller goes on to opine that "there may be some minor contribution from his degenerative disc disease." While Dr. Miller's report is inconclusive about the cause of the disc protrusion, the Court finds other statements from Dr. Miller more pertinent to Plaintiff's argument.

Specifically, in his Declaration, Dr. Miller opines on the issue of whether the L5-S1 disc protrusion and Plaintiff's other conditions could have been diagnosed earlier than July 20, 2005 - the date Plaintiff underwent the MRI. On this issue, Dr. Miller states:

> 5. On April 1, 2009, I telephonically conferred with John Borba, counsel for [P]laintiff from the Hinton, Cochran and Borba Law Offices. I told him that in my opinion it was not medically possible to have determined the extent of [Plaintiff's] injuries, disabilities, or care prior to the MRI of July 20, 2005. In fact, I am of the opinion that his previous health care providers, nor even Gerald Von Bargen himself, could have reasonably formed an opinion as to the extent of his injuries, disability, or need for future care prior to the obtaining the MRIs.

(Dkt. #54-3 at 2-3.)

As indicated above, section 2675(b) requires newly-discovered evidence to have been *not reasonably discoverable at the time of presenting the claim.* On its face, it would appear that Dr. Miller's statement supports Plaintiff's position that the disc protrusion was not discoverable at the time he filed his amended claim. However, a closer reading of Dr. Miller's statement indicates that Plaintiff's disc protrusion was not discoverable *prior to Plaintiff obtaining an MRI*, not because the condition had not developed or manifested itself before that time. Thus, it was not the disc protrusion that was undiscoverable prior to June 2005 - *it was the fact that Plaintiff had not undergone an MRI* that left the condition undiagnosed. This then leaves open the possibility that *Plaintiff and his health care providers could have discovered the disc protrusion prior to the time Plaintiff filed his amended claim in July 2005*. Consequently, the disc protrusion does not meet the newly-discovered evidence exception under section 2675(b). Further, Plaintiff has not proffered any evidence that the disc protrusion developed after June 2005, such that it qualifies as an intervening fact under section 2675(b). Accordingly, the Court finds that the L5-S1 disc protrusion and/or the July 20, 2005 MRI does not meet either of 2675(b)'s exceptions.

### 4.     Conclusion

In sum, the Court finds that based on the arguments and evidence Plaintiff has presented to the Court, none of Plaintiff's proffered bases qualify as newly-discovered evidence or intervening facts under section 2675(b) of the FTCA. The Court therefore finds that Plaintiff has failed carry his burden of showing that he is entitled to pursue damages in excess of the amount he asserted in his amended administrative claim.

### D.    **Relief Under Federal Rules of Civil Procedure 60(b) or 6(b)**

Should the Court deny his request for an order permitting him to seek damages in excess of the amount stated in his administrative claim and his request to amend his administrative claim, Plaintiff requests that the Court grant him leave to amend his administrative claim pursuant to Federal Rules 60(b) and 6(b). In its Opposition, the Government contends that Plaintiff has failed to cite to any authority showing that either Rule applies in the FTCA-administrative claim context. The Government further argues that, even if the Rules did apply, Plaintiff has failed to show grounds justifying relief. The Court agrees with the Government.

1  Turning first to Federal Rule 60(b), this rule provides:

2  > On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
3  > (1) mistake, inadvertence, surprise, or excusable neglect;
4  > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
5  > []
6  > (6) any other reason that justifies relief.

7  As the express wording of Rule 60(b) makes clear, it applies to final judgments, orders, or

8  proceedings. Plaintiff has provided no authority, and the Court has found none, demonstrating that a

9  claimant may be relieved from section 2675(b)'s cap on damages by application of Rule 60(b).

10 Plaintiff's argument under this rule, therefore, fails.

11 Alternatively, Plaintiff seeks relief under Federal Rule 6(b), which provides in pertinent part:

12  > (b) Extending Time.

13  > (1) ***In General***. When an act may or must be done within a specified time, the court may, for good cause, extend the time:

14  
15  > (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

16  > (B) on motion made after the time has expired if the party failed to act because of excusable neglect

17

18 In applying Rule 6(b), the Ninth Circuit has adopted the meaning of "excusable neglect" that the

19 Supreme Court articulated in *Pioneer Investment Services Co. v. Brunswick Associates Ltd.*

20 *Partnership*, 507 U.S. 380, 395 (1993). *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d

21 814, 825 n. 4 (9th Cir. 1996). Specifically, the Supreme Court stated that the determination "is at

22 bottom an equitable one, taking into account all of the relevant circumstances surrounding the

23 party's omission[,]" including (1) the danger of prejudice to the other party, (2) the length of delay

24 and its potential impact on judicial proceedings, (3) the reason for the delay, and (4) whether the

25 party acted in good faith. *Pioneer Inv. Servs.*, 507 U.S. at 395.

26 As an initial matter, the Court notes that Plaintiff has not proffered any authority

27 demonstrating that Rule 6(b) applies to the administrative claim requirements under section 2675(b).

28 That aside, even applying the factors articulated by the Supreme Court, Plaintiff's request is

unavailing. Plaintiff filed his amended administrative claim in June 2005. He did not file the instant Motion seeking permission to exceed or amend his claim amount until February 2009. Even accepting Plaintiff's representations that he first learned about the L5-S1 disc protrusion, the permanency of his disability, and the extent of his pain *after* he filed his amended claim, Plaintiff fails to proffer any explanation as to why he waited over three and a half years to seek to amend his administrative claim to reflect this information. In particular, accepting Plaintiff's statement that he first learned about the L5-S1 disc protrusion and the full extent of his injuries when he underwent an MRI in July 2005, Plaintiff fails to explain why he did not immediately amend his claim at that point. Moreover, granting Plaintiff's Motion would unfairly prejudice the Government. As the Government points out, fact and expert discovery have closed in this case. Thus, the Government would not be able to seek additional discovery to defend against Plaintiff's new amount of claimed damages, which would be six times the amount that has been at issue in this matter since Plaintiff first filed the Complaint. Taking these factors together, the Court finds that Plaintiff's delay in seeking leave to either amend his administrative claim or permission to seek damages exceeding those asserted in his administrative claim was not the result of excusable neglect. The Court therefore denies Plaintiff's request for leave under Rule 6(b).

### III.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Permit an Action Which Exceeds the Total Amount of Government Claim in its entirety (Dkt. #41).

**IT IS SO ORDERED.**

Dated: June 22, 2009

MARIA-ELENA JAMES
United States Magistrate Judge